## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

KIMBERLY A. IWASKO,

      Plaintiff,

vs.                                                             No. CIV 10-1000 RB/KBM

SANTA FE COMMUNITY COLLEGE,
RON LISS, in his Individual Capacity, and
MICHELLE STOBNICKE, in her Individual Capacity.

      Defendants.

### MEMORANDUM OPINION AND ORDER

This matter came before the Court on Defendants' Opposed Motion to Dismiss Counts II and III of Plaintiff's First Amended Complaint for Retaliation and Intentional Infliction of Emotional Distress (Doc. 10), filed on March 14, 2011; Defendants' Opposed Motion to Dismiss Count IV of Plaintiff's First Amended Complaint for Breach of Contract (Doc. 11), filed on March 14, 2011; and Defendants Ron Liss's and Michelle Stobnicke's Opposed Motion to Dismiss Count V, Civil Rights Violations under 42 U.S.C. § 1983 of Plaintiff's First Amended Complaint on the Basis of Qualified Immunity and Other Grounds (Doc. 12), filed on March 14, 2011. Jurisdiction arises under 28 U.S.C. §§ 1331 and 1367.

The Court having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, grants Defendants' Opposed Motion to Dismiss Count V, Civil Rights Violations, and dismisses this claim without prejudice. Consequently, Plaintiff's accompanying 42 U.S.C. § 1988 claim for attorney's fees and costs is also dismissed without prejudice. Dismissal of Count V disposes of Plaintiff's only federal cause of action. The Court declines to exercise supplemental jurisdiction over Iwasko's remaining state law causes of action

and remands Counts I, II, III, and IV to the consideration of the First Judicial District Court, County of Santa Fe, State of New Mexico.

## I.    Background

This action arises from Defendant Santa Fe Community College's termination of former employee Kimberly A. Iwasko, who claims she was fired from her position as Senior Program Director of Adult Basic Education ("ABE") in retaliation for "protected and oppositional" activities taken during the course of her employment. (First Am. Compl.¶ 1.) Ms. Iwasko alleges the following facts, which for the purposes of evaluating Defendants' Motions to Dismiss under Rule 12(b)(6) are assumed to be true. *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).

Defendant Santa Fe Community College ("SFCC") is a public institution in the State of New Mexico having its principal place of business in the County of Santa Fe. (First Am. Compl. ¶ 3.) Defendant Ron Liss is a managerial employee and Vice President of Academics at SFCC. (First Am. Compl. ¶ 5.) Defendant Michelle Stobnicke is a managerial employee and SFCC Interim Dean of Education. (First Am. Compl. ¶¶ 6, 16.)

Ms. Iwasko began her employment as SFCC's  Senior Director of ABE on March 30, 2009. (First Am. Compl. ¶ 9.) Her responsibilities included (1) directing the General Equivalency Diploma ("GED"), English as a Second Language ("ESL"), Transitions to College, and Literacy programs and services related to ABE, (2) writing funding proposals, (3) developing and managing budgets, (4) preparing reports for the college, state, and federal entities, and (5) hiring, training, and supervising personnel. (First Am. Compl. ¶ 8.) Ms. Iwasko was additionally responsible for coordinating services with local, state, and federal agencies,

service providers, schools, and similar programs statewide, as well as ensuring fiscal integrity and establishing and maintaining program procedures in compliance with state and federal policies. (*Id.*)

Pursuant to SFCC policy, Ms. Iwasko's employment was subject to a one-year probationary period. (*Id.*) At the time of her hiring, Ms. Iwasko's direct supervisor was Dr. Susan Marie Rumann, Dean of Education. (First Am. Compl. ¶¶ 8, 10.)

In her First Amended Complaint, Ms. Iwasko presents the following seven sets of communications as the bases for her Whistleblower, Retaliation, Intentional Infliction of Emotional Distress, Breach of Contract, and 42 U.S.C. § 1983 First Amendment claims. (First Am. Compl. ¶¶ 11, 12, 14, 17, 18, 19, & 20.) She asserts that these communications, as well as others not specifically alleged, constituted protected and oppositional activities for which she was ultimately terminated. (First Am. Compl. ¶ 22.)

First, during the initial period of her employment, Ms. Iwasko and Dr. Rumann discussed with Defendant Ron Liss their concerns regarding potential illegal funding of certain Literacy Volunteers of Santa Fe ("LVSF") employees. (First Am. Compl. ¶ 11.) Mr. Liss informed Ms. Iwasko and Dr. Rumann that he had made a deal with LVSF and things would remain the way they were. (*Id.*)

Second, on or about May 19, 2009, Ms. Iwasko brought her concerns regarding forced allocation of LVSF funding to the attention of other state directors at the New Mexico Adult Education Association May gathering. (First Am. Compl. ¶ 20.) Ms. Iwasko also met with Pam Etre Perez, State Director of Adult Education, "formally and informally," to discuss a lack of leadership and support at SFCC. (*Id.*)

Third, Ms. Iwasko communicated with both Dr. Rumann and Mr. Liss regarding her concerns over LVSF student performance, lack of certified teachers for the Comprehensive Adult Student Assessment Systems, program attendance issues, and her belief that ABE was violating State/Federal GED enrollment policies by denying students entrance into the program based on their "origin of birth." (First Am. Compl. ¶ 12.) On July 13, 2009, Dr. Rumann was placed on administrative leave. (First Am. Compl. ¶ 13.)

Fourth, following Dr. Rumann's placement on leave, Ms. Iwasko was interviewed by an SFCC-hired external investigator to whom she communicated her belief that Dr. Rumann's leave was imposed in retaliation for bringing fraud and compliance issues to the attention of SFCC management. (First Am. Compl. ¶ 14.) Ms. Iwasko also expressed her fear that she "would be next to be retaliated against" as a result of her own participation in these communications. (*Id.*) On July 27, 2009, Dr. Rumann received notice that SFCC was terminating her employment. (First Am. Compl. ¶ 15.) Dr. Rumann was subsequently replaced by Defendant Michelle Stobnicke, who was appointed Interim Dean of Education. (First Am. Compl ¶ 16.)

Fifth, during an informal staff meeting in which Ms. Stobnicke solicited the personal opinions of her staff regarding Dr. Rumann's termination, Ms. Iwasko, "making it clear she was speaking as a private citizen and not in her capacity as SFCC employee or ABE Director," expressed to those present that she believed Dr. Rumann had been fired because she had exposed potential fraud involving the Teachers of English to Speakers of Other Languages (TESOL) program, brought to light possible illegalities and malfeasance in the expenditure and administration of Federal grant monies, and had opposed the continued use of State monies in direct payment to 501C(3) entities in possible violation of state law. (First Am. Compl. ¶ 17.)

4

Sixth, in October 2009, Ms. Iwasko complained to Mr. Liss about Ms. Stobnicke's job performance. (First Am. Compl. ¶ 18.) Ms. Stobnicke later became aware of at least one of Ms. Iwasko's complaints on the matter of "Action Research," and informed Ms. Iwasko that, contrary to Ms. Iwasko's stated position that Federal WIA Title II funding required SFCC to use Action Research to drive decision making, SFCC was "not a research college." (*Id.*)

Finally, in January 2010[1], Ms. Iwasko expressed concerns to Ms. Stobnicke regarding the Agua Fria registration process and stated that "had a representative from the state of New Mexico seen the process, SFCC could have had their funds reduced or been cited." (First Am. Compl. ¶ 19.) At this meeting, Ms. Iwasko and Ms. Stobnicke agreed to establish a comprehensive plan to make improvements to the ESL program, including setting specific teacher certification targets to be achieved through Spring 2011.[2] (*Id.*)

On March 25, 2010, Ms. Iwasko was called into the SFCC Human Resources office and handed a letter of termination. (First Am. Compl. ¶ 21.) Upon inquiring as to her rights to challenge the termination, Human Resources informed her that her status as a probationary employee precluded her from contesting the decision. (*Id.*)

On August 20, 2010, Ms. Iwasko filed her Complaint Pursuant to the New Mexico Whistleblower Act and Other Claims in the First Judicial District Court of the State of New Mexico. Ms. Iwasko filed her First Amended Complaint on September 24, 2010, the only

---

[1]Paragraph 19 of Plaintiff's First Amended Complaint dates this communication as "January 2009"; however, a review of the record suggests that this date should read "January 2010."

[2]Plaintiff's First Amended Complaint here states "Spring 2010." (First Am. Compl. ¶ 19.) However, the record suggests that the Plaintiff intended to state "Spring 2011."

5

apparent amendment being to correct a significant typographical error contained in the original

filing. (*See* Compl. ¶ 21, & First Am. Compl. ¶ 21.) Plaintiff's First Amended Complaint

alleges violations of the New Mexico Whistleblower Protection Act (Count I), Retaliation

(Count II), Intentional Infliction of Emotional Distress (Count III), Breach of Contract (Count

IV), and Civil Rights Violations under 42 U.S.C. § 1983 (Count V). The plaintiff further asserts

a claim for Attorney's Fees and Costs Pursuant to 42 U.S.C. § 1988 (Count VI) based on her §

1983 cause of action. 42 U.S.C. § 1988(b). Defendants removed the matter to Federal court on

October 22, 2010, pursuant to 28 U.S.C. §§ 1441(b) and 1441(c). (Doc. 1.)

On March 14, 2011, Defendants filed Defendants' Opposed Motion to Dismiss Counts II

and III of Plaintiff's First Amended Complaint for Retaliation and Intentional Infliction of

Emotional Distress, Defendants' Opposed Motion to Dismiss Count IV of Plaintiff's First

Amended Complaint for Breach of Contract, and Defendants Ron Liss's and Michelle

Stobnicke's Opposed Motion to Dismiss Count V, Civil Rights Violations under 42 U.S.C. §

1983 of Plaintiff's First Amended Complaint on the Basis of Qualified Immunity and Other

Grounds. Defendants move to dismiss each of Plaintiff's claims pursuant to Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. More

specifically, Defendants contend that: (1) Plaintiff fails to state a claim for Retaliation or

Intentional Infliction of Emotional Distress because Defendants have immunity pursuant to the

New Mexico Tort Claims Act, NM 1978 § 41-4-1 *et seq* (Doc. 10); (2) Plaintiff fails to state a

claim for Breach of Contract because Plaintiff has not alleged facts to plausibly suggest

Defendants breached any specific contractual rights (Doc. 11); and (3) Plaintiff fails to state a

claim for retaliation based on the exercise of First Amendment protected speech because (a) the

alleged speech was not protected under the First Amendment, and (b) Defendants are entitled to qualified immunity (Doc. 12.).

In response to Defendants' Motion to Dismiss Counts II and III, Ms. Iwasko contends that the Complaint presents issues of fact concerning the scope of Defendants' duty under the New Mexico Tort Claims Act and that the claim therefore cannot be resolved at the Rule 12(b)(6) stage. (Doc. 17.) Defendants respond that contrary to Ms. Iwasko's assertions, her First Amended Complaint does not plead any facts indicating that Defendants Liss or Stobnicke were acting outside the scope of their duties. (Doc. 21).

Responding to Defendants' Motion to Dismiss Count IV, Ms. Iwasko argues that Defendants' challenge to the sufficiency of the Complaint must fail because the Complaint alleges facts allowing a reasonable jury to find the existence of a written or implied in fact employment contract between herself and SFCC. (Doc. 18.) In their reply brief, Defendants reiterate that Ms. Iwasko has failed to sufficiently allege either the existence or breach of a valid written contract. (Doc. 22.)

Finally, Ms. Iwasko's Response to Defendants Liss and Stobnicke's Motion to Dismiss Count V maintains that the allegations in the Complaint present facts sufficient to allow a reasonable jury to conclude that Defendants retaliated against Ms. Iwasko in violation of her First Amendment right to free speech, and that Defendants' Motion must therefore be denied. (Doc. 19.) Defendants counter that Ms. Iwasko relies exclusively on a single factual allegation as the basis of her § 1983 claim, that this allegation does not satisfy pleading standards, and that Ms. Iwasko's claim fails at this stage under Supreme Court and Tenth Circuit substantive law. (Doc. 20.) In the interests of judicial economy, the Court will first address Plaintiff' only federal

claim, Retaliation in violation of her First Amendment rights.

## II.    Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  While a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief," it must "contain enough allegations of fact 'to state a claim to relief that is plausible on its face.' " *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.--, 129 S. Ct. 1937, 1949 (2009).  In this examination, a court must find that a plaintiff has "nudged [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Robbins*, 519 F.3d at 1247.  In evaluating a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff.  *David v. City and Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996); *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099 (10th Cir. 2009).

## III.    Discussion

### A.    Count V – § 1983 First Amendment Claim

Ms. Iwasko's fifth claim, brought under § 1983, asserts that Defendants Mr. Liss and Ms.

Stobnicke violated her right to free speech under the First Amendment by terminating her

employment in retaliation for comments she made regarding the firing of her former supervisor,

Dr. Rumann.  (First Am. Compl. ¶ 53.)   Defendants launch a three-fold attack on Plaintiff's

claim.  They first argue that Ms. Iwasko neglected to isolate the allegedly unconstitutional acts

of each defendant and therefore failed to provide them with adequate notice of the charges

against them.  Defendants next assert that Ms. Iwasko has failed to plead facts sufficient to state

a § 1983 claim under the framework set out in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and

*Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202 (10th Cir. 2007).

Finally, they contend that because Ms. Iwasko has failed to adequately plead a constitutional

violation, they are entitled to qualified immunity.  The Court will consider each argument in

turn.

> 1.    *Adequate Notice*

The Court rejects Defendants' primary assertion that Ms. Iwasko failed to provide

adequate notice of the claims against them.  In Paragraph 17 of her First Amended Complaint,

Ms. Iwasko states:

> Shortly after assuming her position as interim Dean of Education, Stobnicke called an
> informal staff meeting in which she solicited the personal opinions of her staff, including
> Iwasko, about Rumann's termination.  Iwasko forthrightly, making it clear she was
> speaking as a private citizen and not in her capacity as SFCC employee or ABE Director,
> told Stobnicke and those present that she was of the opinion that Rumman had been fired
> because Rumann had exposed potential fraud involving the TESOL program, possible
> illegalities and malfeasance in the expenditure and administration of Federal grant
> monies, and because she had opposed the continued use of State monies in direct
> payment to 501C(3) entities in possible violation of state law.

> Based on this communication, Ms. Iwasko alleges that Defendants Mr. Liss and Ms.

Stobnicke knew or should have known "that they were acting in violation of her constitutional

rights in causing her employment to be terminated in retaliation of her protected speech, on a matter of public concern, made as a private citizen as set out in Paragraph 17, above and as made to other public entities and third parties." (First Am. Compl. ¶ 53.) The Court notes that the phrase "as made to other public entities and third parties" is highly cryptic and fails to identify any specific communications against which the defendants supposedly retaliated. However, the primary focus of Ms. Iwasko's First Amendment claim is on the specific communication alleged in Paragraph 17, namely, her comments made in the staff meeting with Ms. Stobnicke. This allegation does more than merely allege a "wide swath of conduct," *Robbins*, 519 F.3d at 1247; it explains the substance of her comments, identifies the particular meeting at which these comments were made, specifies to whom she was speaking, and clearly states that the defendants caused her to be terminated in retaliation for these comments. In addition, although the phrase "causing her employment to be terminated" is somewhat vague, the Court recognizes that employees are rarely privy to the catalogue of behind-the-scenes decision making preceding a termination, and that Ms. Iwasko may be unable at this point to determine precisely how her termination occurred. Thus, Ms. Iwasko has provided adequate notice to Defendants regarding their alleged constitutional violations.

2.    *Sufficiency under Garcetti/Pickering Analysis*

Second, Defendants argue that Ms. Iwasko has failed to plead facts sufficient to state a § 1983 claim under the under the substantive law set out in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202 (10th Cir. 2007). The Court agrees with Defendants for the reasons set forth below.

Section 1983 provides a federal cause of action against state officials for "the deprivation

10

of any rights, privileges, or immunities secured by the Constitution and laws." *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004). To successfully state a claim under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Hall v. Witteman*, 584 F.3d 859 (10th Cir. 2009). "The core inquiry under any § 1983 action . . . is whether the plaintiff has alleged an actual constitutional violation." *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007).

Ms. Iwasko has sufficiently alleged that Mr. Liss and Ms. Stobnicke were acting in their respective capacities as state employees, under color of state law, during the events described in the First Amended Complaint. (First Am. Compl. ¶¶ 5, 6, & 51). The crux of the dispute therefore lies in whether Ms. Iwasko has sufficiently alleged a violation of her Constitutional right to free speech. In the context of a public employee bringing a § 1983 retaliation claim based on protected speech, plaintiffs must meet the elements established by the Supreme Court in *Pickering v. Board of Education*, 391 U.S. 563 (1968), as modified by *Garcetti v. Ceballos*, 547 U.S. 410 (2006). *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007). Under this modified "*Garcetti/Pickering*" analysis, plaintiffs must show:

> (1) that the employee's speech was made as a private citizen and not pursuant to her official duties; (2) that the subject of the speech was a matter of public concern; (3) if the Court finds that the employee was speaking as a private citizen on a matter of public concern, that the employee's interest in commenting on the issue outweighed the interest of the state as employer; and (4) if so, that the employee's speech was a substantial or motivating factor in the adverse employment decision. If the employee establishes that her speech was such a factor, the employer may then demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

*Brammer-Hoelter*, 492 F.3d at 1202-03. The first three steps are questions of law to be determined by the district court, while the last two are generally for the trier of fact. *Id.*at 1203;

*see also Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010).

(a)    *Citizen Speech*

The threshold inquiry for Ms. Iwasko's § 1983 First Amendment claim is whether her speech was made pursuant to her official duties or as a private citizen. The *Garcetti* Court did not establish a specific framework for defining the scope of an employee's duties, as this was not at issue in the case. *Garcetti*, 547 U.S. at 424. The Court emphasized, however, that the inquiry is "a practical one." *Id.*; *see also Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1135 (10th Cir. 2010). "Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Id.* at 424-25.

Tenth Circuit decisions interpreting the first step of the *Garcetti/Pickering* analysis "have taken a broad view of the meaning of speech that is pursuant to an employee's official duties," and have engaged in this analysis on a "case-by-case approach, looking both to the content of the speech, as well as the employee's chosen audience . . . ." *Rohrbough*, 596 F.3d at 746 (internal citations omitted). In addition, the Tenth Circuit has identified at least two factors which indicate that an employee was speaking as a private citizen rather than pursuant to her job responsibilities: "(1) the employee's job responsibilities did not relate to reporting wrongdoing and (2) the employee went outside the chain of command when reporting the wrongdoing." *Reinhardt*, 595 F.3d at 1136-37. Courts counsel, however, that "no one factor is dispositive." *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010). "The guiding

12

principle is that speech is made pursuant to official duties if it involves 'the type of activities that [the employee] was paid to do.' " *Id.* at 713 (quoting *Green v. Bd. of Cnty. Commr's,* 472 F.3d 794, 801 (10th Cir. 2007)).

Applying these principles and drawing all reasonable inferences in favor of Ms. Iwasko, the Court finds that she has met her pleading burden on this issue.

First, the Court notes the fact that Ms. Iwasko "ma[de] it clear she was speaking as a private citizen" is not dispositive. Whether her speech was made as a private citizen or as a government employee is a legal question to be decided by the Court. *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1329 (10th Cir. 2007). There is no case law to support the notion that an employee can "switch hats" by couching her statement in this manner; therefore her phrasing is relevant only insofar as it supports her factual contention that her comments were specifically solicited as a private, personal opinion.

In her employment with SFCC, Ms. Iwasko was responsible for ensuring fiscal integrity and establishing and maintaining program procedures in compliance with state and federal policy. (First Am. Compl. ¶ 8.) During the meeting at issue, Ms. Iwasko expressed her opinion that her former supervisor, Dr. Rumann, had been fired in retaliation for bringing fraud and compliance issues to the attention of SFCC management. Although this comment did relate to her work responsibilities in a general sense, it arguably falls outside her stated duties of ensuring fiscal integrity and maintaining *program* compliance with state and federal law.

Further, although Ms. Iwasko did not go "outside the chain of command," *Reinhardt*, 595 F.3d at 1136, and in fact made her comments at the request of her supervisor, Ms. Iwasko has alleged that Ms. Stobnicke expressly solicited her *personal* opinion. At this early stage in the

litigation, certain facts that could provide additional context to the speech are not available.  For instance, it is unclear exactly how Ms. Stobnicke phrased her question or whether she suggested that  in some manner, the exchange would be "off the record."  Even if the Court assumed that Ms. Iwasko's comments were the type of activity she was paid to do, a representation by Ms. Stobnicke that the employees' opinions were being solicited in a strictly personal capacity could recast speech ordinarily construed as "pursuant to employment duties" as private, citizen speech.  Based on the facts currently alleged and drawing all reasonable inferences in Ms. Iwasko's favor, it is plausible that the comments were made in her capacity as a private citizen.

(b)      *Public Concern*

The parties do not dispute that the improper use of funds by public employees is a matter of public concern.  (*See* First Am. Compl. ¶ 53.) (*See also* Defendants' Liss and Stobnicke's MTD Count V, at 6.) ("Under Tenth Circuit precedent, Plaintiff's alleged statements about irregularities in the use of funds may be considered matters of public concern."); *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1331 (10th Cir. 2007) ("As we have held many times, speech reporting the illicit or improper activities of a government entity or its agents is obviously a matter of great public import.").   It likewise stands to reason that Ms. Iwasko's opinion regarding SFCC's  firing of an employee for speaking out about such improper activities is also a matter of public concern.  The Defendants argue that because Ms. Iwasko made her statement pursuant to her employment duties, the fact that her speech was on a matter of public concern is irrelevant. (First Am. Compl. ¶ 53.)  However, because the Court finds that Ms. Iwasko has met her pleading burden on that issue, for the purposes of this motion it will adopt the position of the parties that her speech was on a matter of public concern and proceed to the next step of the

14

analysis.

(c)    *Balancing the Interests*

Having found that Ms. Iwasko has met her pleading burden in alleging that her comments involved citizen speech on a matter of public concern, the Court must next consider whether Ms. Iwasko's interest in making the speech outweighs the interest of SFCC as a state employer.  At this stage, however, the Court lacks a sufficient factual record upon which to base this analysis.

The Tenth Circuit has held that "First Amendment rights are protected unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee."  *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1304 (10th Cir. 2009).  "[U]nless the government employer can show that the termination was based on legitimate reasons grounded in the efficient conduct of public business, there is no need to proceed to balancing, and the First Amendment interest of the plaintiff prevails."  *Id.*  This inquiry entails "a true burden of *demonstration*, not a mere matter of hypothetical articulation."  *Trant v. Oklahoma,* No. 10–6247, 2011 WL 2356385, at *7 (10th Cir. June 15, 2011) (emphasis in original).

At this point, Defendants have had no opportunity to present evidence concerning their interest in regulating the speech at issue.  Neither has the plaintiff set forth any allegations relevant to this prong beyond her assertion of her First Amendment interest in free speech.  Were the Court to attempt a balancing, it would be engaging in its own "hypothetical articulation" of the parties' respective interests.  *Trant,*  2011 WL 2356385, at *7.  For the purposes of Defendants' motion to dismiss, however, it is unimportant that the Court cannot fully engage with this factor.  As explained below, even if Ms. Iwasko has met her burden on this issue, her

15

claim ultimately fails at the fourth step of the *Garcetti/Pickering* inquiry.

(d)    *Speech as a Substantial Motivating Factor for the Termination*

The fourth prong of the plaintiff's First Amendment retaliation claim requires her to

show that (1) she suffered an adverse employment action, and (2) her constitutionally protected

speech was a substantial motivating factor in her employer's detrimental employment decision.

*Couch v. Bd. of Trs. of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223 (10th Cir. 2009) (quoting

*Maestas v. Segura*, 416 F.3d 1182, 1188 & n.5 (10th Cir. 2005)).

Ms. Iwasko has alleged that she was terminated in retaliation for her protected speech,

thus satisfying the requirement that she suffered an adverse employment action.  However, Ms.

Iwasko has failed to plead any facts supporting the conclusion that her speech was a substantial

motivating factor in SFCC's decision to terminate her employment.  Her protected speech took

place at a meeting "shortly after [Stobnicke] assum[ed] her position as interim Dean of

Education," which her First Amended Complaint dates as July 28, 2009.  (First Am. Compl. ¶¶

16-17.)  She was terminated on March 25, 2010 – nearly eight months later.  (First Am. Compl. ¶

21.)  The Tenth Circuit has held that courts "cannot infer causation from temporal proximity

alone when the time lapse between the protected activity and the retaliatory act exceeds three

months."[3]  *Lauck v. Campbell Cnty.*, 627 F.3d 805, 815 (10th Cir. 2010).  The *Lauck* court

further noted that when this period does exceed three months, "events in the interim might

_____

[3]Although the *Lauck* court based this proposition on several non-First Amendment
retaliation cases, it specifically stated "[w]e can see no reason why the causation analysis used in
those cases should not apply to a First Amendment retaliation claim."  *Lauck*, 627 F.3d at 816.
Further, although *Lauck* was decided in the context of a motion for summary judgment, it still
helps inform the Rule 12(b)(6) inquiry by providing guidance to the causation analysis under the
fourth prong of *Garcetti/Pickering.*.

provide sufficient additional support to sustain a causation finding." *Id.* at 816.  Ms. Iwasko's

First Amended Complaint fails to allege any "events in the interim," relying only on the

termination itself as evidence that her speech was a substantial motivating factor in SFCC's

decision to end her employment.

Perhaps anticipating this ostensible defect in her case, Ms. Iwasko's Response to

Defendants' Opposed Motion to Dismiss Count V states, "[h]ere, Iwasko was terminated within

months after her statements made to Stobnicke.  Similarly, she received performance rebukes

and counseling."  (Plaintiff's Response to Defendants' MTD Count V, at 11) (Doc. 19).  The

Court's inquiry on a motion to dismiss, however, is limited to the four corners of the complaint.

*Trant v. Oklahoma*, No. 10–6247, 2011 WL 2356385 at \*1 (10th Cir. June 15, 2011) (citing

*Archuleta v. Wagner,* 523 F.3d 1278, 1281 (10th Cir.2008)).  Plaintiff's First Amended

Complaint makes no mention of such "performance rebukes or counseling," nor does it offer any

detail regarding SFCC's intervening behavior.

Ms. Iwasko correctly notes that in the Tenth Circuit, the fourth prong of the

*Garcetti/Pickering* analysis is generally the province of the trier of fact. (Plaintiff's Response to

Defendant' MTD Count V, at 10.)  *See also Brammer-Hoelter*, 492 F.3d at 1203.  However, Ms.

Iwasko cannot rely on this fact to circumvent her pleading burden under Rule 12(b)(6).  "While

[a plaintiff] is not required to prove its case in the pleadings, the complaint must allege *facts*

which plausibly support the allegation that [the defendant's] alleged actions involved a

retaliatory motive."  *Glover v. Mabrey*, 384 Fed. Appx. 763, 772 (10th Cir. 2010) (emphasis in

original).  In *Glover*, a highway contractor brought a § 1983 claim against the Oklahoma

Department of Transportation alleging retaliation in violation of his First Amendment rights after

17

the Department threatened to revoke its status as a pre-qualified bidder. *Id.* at 765-66. In reviewing the district court's denial of the defendant's motion to dismiss, the Tenth Circuit Court of Appeals found that the complaint "fail[ed] to allege any level of temporal proximity" between the protected speech and the alleged retaliation. *Id.* at 773. Although *Glover* is somewhat distinguishable in that the plaintiff there failed to allege *any* level of temporal proximity, whereas Ms. Iwasko alleges eight months of proximity, the critical point was that the complaint "provide[d] nothing which actually tie[d] [the contractor's] comments and [the defendant's] actions together except the categorical statement that [the defendant] 'took his course of action in retaliation' " for the plaintiff's speech. *Id.* Although the facts "[did] not rule out the possibility of a retaliatory motive, 'and thus at some level they [were] consistent with a viable First Amendment claim, . . . mere possibility is not enough.' " *Id.* (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 971-72 (9th Cir. 2009)). *See also Beyer v. Borough*, No. 10-3042, 2011 WL 1420605 at *5 (3d Cir. Apr. 14, 2011) ("The temporal proximity clearly makes it plausible that the protected activity was a substantial factor."); *Brantly v. Unified School Dist.*, No. 08-2059-KHV, 2008 WL 2079411 (D. Kan. May 15, 2008) ("The proximity between his complaint to Lane and his demotion is sufficient to allege causation.").

The Court finds the reasoning of the above cases persuasive, and holds that Ms. Iwasko has failed to allege facts making it plausible that her termination was in retaliation for the specific speech made at her meeting with Ms. Stobnicke. As in *Glover*, where the plaintiff failed to plead any facts actually tying its speech to the alleged retaliation, Ms. Iwasko offers nothing to connect her protected speech to her termination apart from the blanket allegation that Defendants "caus[ed] her employment to be terminated in retaliation of her protected speech."

(First Am. Compl. ¶ 53).  Further, unlike *Beyer* and *Brantly* (cited above), where the employers'
alleged retaliatory actions occurred six weeks and three days, respectively, after the plaintiffs'
speech, here there is an eight-month gap between the meeting at issue and Ms. Iwasko's
termination.  This eight-month lapse, in combination with Ms. Iwasko's failure to plead any facts
actually tying these two incidents together, fails to nudge her retaliation claim across the line
from conceivable to plausible.  *Twombly*, 550 U.S. at 570.

The Court additionally observes that Ms. Iwasko has alleged several other instances of
speech made throughout the course of her employment at SFCC, which serve as the bases for her
state law causes of action.  (First Am. Compl. ¶¶ 11, 12, 14, 18, & 19).  She admits that these
other statements were made "in her capacity as Senior Director of Adult Basic Education at
SFCC," which – by virtue of this admission – makes them ineligible as grounds for her First
Amendment claim. (First Am. Compl. ¶ 32); *Brammer-Hoelter*, 492 F.3d at 1202-03 (in order to
state a viable First Amendment retaliation claim, the public employee must allege that her
speech was made as a private citizen and not pursuant to her official duties).  On the face of the
complaint, it appears likely that Ms. Iwasko based her § 1983 action on her meeting with Ms.
Stobnicke not because there were any substantial indicators that this was the actual basis for
retaliation, but rather because it was the only speech she could plausibly claim escaped the
strictures of the *Garcetti/Pickering* analysis's first prong.  Even assuming her protected speech
was a factor in her termination, Ms. Iwasko has not alleged any facts indicating that this
particular speech was a *substantial* motivating factor in SFCC's actions.  Therefore, Ms. Iwasko
has not met her pleading burden under the fourth prong of the *Garcetti/Pickering* analysis and
Count V must be dismissed for failure to state a claim upon which relief can be granted.

3.     *Qualified Immunity*

Because Ms. Iwasko has failed to adequately plead a constitutional violation, the

Defendants are entitled to qualified immunity.  "Government officials performing discretionary

functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Overcoming a qualified

immunity defense requires the plaintiff to allege facts sufficient to show that (1) the defendants

plausibly violated her constitutional rights, and (2) those rights were clearly established at the

time.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1248-49 (10th Cir. 2008).  Because Ms. Iwasko has

not sufficiently alleged that her protected speech was a motivating factor in her termination, she

cannot show a deprivation of her First Amendment rights.  The Defendants are therefore entitled

to qualified immunity on this count.

**IV.     Supplemental Jurisdiction**

Because the Court has found that Defendants' motion to dismiss should be granted as to

Ms. Iwasko's § 1983 claim, federal-question jurisdiction no longer exists.  At this point, neither

party has expended significant time or resources on discovery, (*see* Defendants' Opposed

Motion to Stay Discovery Pending a Decision on Qualified Immunity, filed March 14, 2011

(Doc. 9), *and* Plaintiff's Notice of Withdrawal of Opposition to Defendants' Motion to Stay

Discovery, filed April 6, 2011 (Doc. 15)), and the remaining state claims do not raise any issues

implicating federal law.  "[I]f federal claims are dismissed before trial, leaving only issues of

state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case

without prejudice.' "  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (quoting

*Bauchman v. West High Sch.*, 132 F.3d 542, 549 (10th Cir.1997)).  Courts "generally decline to exercise pendent jurisdiction in such instances because '[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.' " *Id.* at 1230.  Therefore, although the Court has discretion to retain supplemental jurisdiction over Ms. Iwasko's remaining state law claims, it declines to exercise that discretion and will remand these claims to the consideration of the state court.  *See* 28 U.S.C. 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction [if the] . . . court has dismissed all claims over which it has original jurisdiction").

      **THEREFORE,**

      **IT IS ORDERED** that Defendants Ron Liss's and Michelle Stobnicke's Opposed Motion to Dismiss Count V, Civil Rights Violations under 42 U.S.C. § 1983, of Plaintiff's First Amended Complaint on the Basis of Qualified Immunity and Other Grounds (Doc. 12), filed on March 14, 2011, is **GRANTED** without prejudice.  Plaintiff's accompanying 42 U.S.C. § 1988 claim for Attorney Fees and Costs is dismissed without prejudice.  Plaintiff's remaining state law claims are remanded to the First Judicial District Court, County of Santa Fe, State of New Mexico.

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**